(117 App. Div. 817)

SHAPIRO v. SHAPIRO et al.

(Supreme Court, Appellate Division, Second Department.   March 15, 1907.)

1. BROKERS—RIGHT TO COMPENSATION—SUFFICIENCY OF SERVICES.

Where real estate brokers, attempting to call up the owner of land by telephone, by mistake called up another real estate broker of the same name, and the latter made an appointment to bring them into personal communication with the owner, who finally agreed to sell the premises to them, the broker thus called up by mistake is not entitled to compensation for his services.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, § 74.]

2. SAME—EMPLOYMENT OF BROKER.

Where the owner of land agreed to sell it to real estate brokers, who at first stated that they were acting for themselves, but afterwards, before the contract was made, stated that they were acting as brokers, and the contract was made to a third person, proof of their employment before the making of the contract was not essential to their right to commissions.

3. SAME.

Where the owner of houses and lots placed them in the hands of real estate brokers for sale, and they called the attention of another firm of brokers to the property, and the latter procured a purchaser, the first brokers were not entitled to commissions.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, §§ 82, 83.]

Appeal from Municipal Court, Borough of Brooklyn, Third District.

Action by Barnet Shapiro against Barnet Shapira and others.   From the judgment, defendants Marcus Michel and another appeal.   Reversed, and new trial ordered.

Argued before HIRSCHBURG, P. J., and JENKS, HOOKER, GAYNOR, and RICH, JJ.

Jacob W. Kahn, for appellant, Shapiro.
C. W. Wilson, Jr., for appellants, Michel and Scott.
Samuel Chugerman, for respondents.

JENKS, J.   Barnet Shapiro owned houses which were for sale. Leder, of the brokerage firm of Leder & Zellermeyer, called the houses and the price to the attention of Michel, of the firm of Michel & Scott. Michel made a memorandum, including the owner's name, and went to look at the houses.   Some months after, Michel & Scott, attempting to call the owner, Barnet Shapiro, to the telephone, called up another Barnet Shapiro, a broker, who truthfully answered that he was Mr. Shapiro, and who said that he knew about the houses, and who finally made an appointment to bring Michel & Scott and the owner Shapiro into personal communication.   The owner Shapiro finally agreed to sell the premises to Michel & Scott, who told the owner that they were purchasers, and not brokers.   When the time of closing the contract came, Michel & Scott admitted to the owner that they represented Busch, whose name they then signed to the contract, giving their own check on account of the purchase.   The premises were thereafter conveyed to Busch.   The broker Shapiro then sued the owner Shapiro for commissions.   The owner, beset also by the

claims of Leder & Zellermeyer and of Michel & Scott, paid the amount of the commissions into the court, and was relieved by order of interpleader, so that the question litigated was the contention of these three brokers. The Municipal Court gave judgment for Leder & Zellermeyer.

Upon the record I cannot say that the court erred in excluding the claim of Barnet Shapiro, for it does not appear that the buyer was induced by him to apply to the purchaser. Metcalfe v. Gordon, 86 App. Div. 368, 370, 371, 83 N. Y. Supp. 808, and cases cited. If the buyer was Busch, there is not the slightest connection shown. If the buyers were in fact Michel & Scott, they were in possession of the particulars, knew the name of the owner, and were actually seeking him, when the accident of name and surname permitted the broker Shapiro to get wind of the project, and to proffer his services, which were really nothing more than to secure what direct telephonic communication might have brought to pass, if the right Shapiro had been found under the wrong Shapiro's telephone number. The Municipal Court excluded the claim of Michel & Scott, because they were not employed as agents prior to the making of the contract of sale to Busch. I do not think that proof of such employment was essential. If Michel & Scott, before the contract was made out to Busch, revealed that he was their principal, and they were after all but the brokers, "a conscious appropriation of their labors" as brokers, or indeed "a mere acceptance of such labors," might suffice to establish the relationship of broker in the sale. Sibbald v. Bethlehem Iron Co., 83 N. Y. 378, 38 Am. Rep. 441. The difficulty with holding the judgment in favor of Leder & Zellermeyer is that they did not produce Busch, the purchaser. It is true that they gave information to Michel & Scott, but Michel & Scott produced Busch, and, if Busch was the purchaser, Leder & Zellermeyer did not earn their commissions. Sibbald v. Bethlehem Iron Co., supra; Colwell v. Tompkins, 6 App. Div. 93, 93 N. Y. Supp. 478, affirmed 158 N. Y. 690, 53 N. E. 1124. The strongest aspect of the case for Leder & Zellermeyer is that Michel & Scott were the real purchasers, and that Busch was but a dummy. But, suppose this were the fact, the evidence is not sufficient to sustain their claim under the rules of the cases last cited. If such were the case, and they could go further to show that they produced the real purchaser, that the sale to Busch was a device to avoid the payment of commissions, or that the owner capriciously changed his mind after Michel & Scott had been produced as a fit purchaser, then quite another question would be presented. Sibbald v. Bethlehem Iron Co., supra.

I recommend that the judgment be reversed, and that a new trial be ordered, costs to abide the event. All concur.