DE BOLT et al. v. POINTER et al.

No. 33925.    Feb. 20, 1951.

*228 P. 2d 182.*

Eugene P. Ledbetter and T. Murray Robinson, Oklahoma City, for plaintiffs in error.

Andrew Fraley and O. B. Martin, Oklahoma City, for defendants in error.

LUTTRELL, V.C.J. This is an action for a real estate broker's commission, brought by the plaintiffs, Tom Pointer and Tom Pointer, Jr., against the defendants, A. M. DeBolt and Frances DeBolt Hessmer. The trial court overruled the demurrer of defendants to plaintiffs' evidence and their motion for a directed verdict, and submitted the cause to a jury, which returned a verdict for plaintiffs. Defendants appeal.

There is little dispute as to the facts. From the record it appears that defendants were the owners of a warehouse in Oklahoma City, and through the defendant A. M. DeBolt employed plaintiffs to lease the same, the employment contemplating a lease of at least five years for a monthly rental of $900. Pursuant to this employment plaintiffs contacted various parties, among them - being Sears Roebuck & Company. Sears Roebuck & Company was interested, and the manager of its retail store, Mr. Troyer, and an official in its land or property department, Mr. Landon of Dallas, Texas, interviewed Pointer and DeBolt with a view to leasing the property, but due apparently to the amount of rental demanded by the defendants declined at that time to execute the lease. This interview was held in the office of plaintiffs in the early part of November, 1945. Thereafter plaintiffs endeavored to lease the property to other parties, and also attempted to interest Sears Roebuck & Company further, and finally effected a lease with another firm. The property was then occupied by the federal government, and the lease entered into by such other parties and defendants contained a provision giving the lessees the right to cancel the lease in the event the government did not vacate the property by February 15, 1946. The government failed to do this and the lessees canceled the lease.

The testimony of plaintiffs was that thereafter their employment continued, and the record shows that on March 6, 1946, Tom Pointer notified by letter Mr. Troyer and Mr. Landon, the representatives of Sears Roebuck & Company, that the property was again available and urged them to lease the same. Pointer testified that after delivering that letter personally to Mr. Troyer and sending a copy to Mr. Landon, he talked to Troyer repeatedly, both personally and over the telephone, in an endeavor to lease the property to Sears Roebuck & Company. Troyer admitted receiving the letter, and when asked in reference to the telephone calls and personal interviews testified to by Pointer, answered that he could not recall, but he nowhere denied such interviews or telephone calls. Landon admitted receiving the letter of March 6th in reference to the property.

On March 13, 1946, defendants put an advertisement in an Oklahoma City newspaper advertising the property for lease. In the meantime Sears Roebuck & Company entered into an agreement with the owner of the building which was occupied by its retail store whereby in consideration of its leasing additional space for the store, the landlord agreed to pay part of the warehouse rental. Troyer then contacted Mr. Hessmer, husband of the defendant, Frances DeBolt Hessmer, and procured a lease which was approved by the Chicago office of Sears Roebuck & Company and entered into between the parties. This lease provided for a monthly rental of $833.33 instead of $900 originally demanded by the defendants.

For the defendants A. M. DeBolt testified that after the cancellation of the lease effected upon the property by plaintiffs to third parties, he orally told Tom Pointer that he was withdrawing the property from the market, at least, until the federal government had vacated it. He placed this conversation as being either on March 5th or 6th, 1946. Mr. Troyer for Sears Roebuck &

Company, although he admitted receiving the letter of March 6th from plaintiffs, testified that he saw the advertisement put in the paper by defendants on March 13, 1946, and was then apprised for the first time that the property could be leased. Mr. Landon testified that ever since the first interview with reference to the property in 1945, he and his company had been interested in leasing the property, and that the only time they lost interest was when they were advised that the property had been leased to a third party.

On appeal defendants first contend that the evidence shows that plaintiffs were not the procuring cause of the sale and were not entitled to compensation. We are unable to agree with this contention. We have many times held that whether a broker was the procuring cause of a sale was a question for the jury if there was any evidence tending to support the broker's claim. Artlin Realty Co. v. Glass, 170 Okla. 588, 41 P. 2d 471, and authorities therein cited. We further held that if the broker's efforts were the foundation upon which negotiations resulting in the sale were begun he was entitled to recover. To the same effect are Cales v. Pattison, 189 Okla. 160, 114 P. 2d 457; Eastern Machinery Co. v. Conroy, 195 Okla. 37, 155 P. 2d 521, and other decisions of this court. In the instant case Sears Roebuck & Company officials did not deny that plaintiffs on and after March 6th continued to interview them in an endeavor to interest them in leasing this property, and the only explanation they offered for their failure to deal with plaintiffs for the property was that they did not particularly feel any obligation to deal with plaintiffs. This testimony, if believed by the jury, was amply sufficient to sustain the verdict for plaintiffs.

Defendants cite, quote from, and rely upon Longmire v. Webber, 109 Okla. 49, 234 P. 620; Cantrell v. McLemore, 119 Okla. 176, 249 P. 417, and Head-Berry v. Bannister, 52 Okla. 763, 153 P. 669. We have examined these cases and do not consider the rules therein announced applicable to the instant case because of factual differences. Thus, in Longmire v. Webber, supra, the plaintiff's evidence showed that defendant had instructed him to withdraw the land from the market and not make a sale, and that thereafter, regardless of the termination of his contract, plaintiff produced a prospective purchaser who was willing to take the property, and claimed to be entitled to a commission for so doing. We held that this evidence wholly failed to sustain a cause of action for his commission.

In Cantrell v. McLemore, supra, the evidence conclusively showed that plaintiff undertook to negotiate a trade for the property with a third party whose representative he was, and that he never introduced said party to defendant as a prospective purchaser, but solely as a party willing to exchange property.

In Head-Berry Co. v. Bannister, supra, plaintiff was employed to sell certain lots at auction under what he contended was an exclusive contract, and after making the contract defendant sold certain of the lots to third parties, admittedly without any assistance whatever on the part of plaintiff.

Obviously the cases have no application to the situation presented in the instant case.

The trial court did not err in overruling defendant's motion for directed verdict and in submitting the cause to the jury.

Defendants also contend that the trial court erred in not submitting to the jury by an appropriate instruction the question of whether or not defendants withdrew the property from the market and instructed plaintiffs not to make any further effort to lease it, thus in effect terminating the employment of plaintiffs. But examination of the rec-

ord discloses that defendants did not request any instruction of this nature. Defendants in their answer alleged that the negotiations with Sears Roebuck & Company had failed and had been abandoned, and that upon the cancellation of the lease to third parties above referred to, they considered the arrangements with Tom Pointer at an end, and that any further effort made by him to lease the property was purely voluntary and without their knowledge and consent, and was not pursuant to any contract of employment by the defendants. They nowhere specifically allege that they withdrew the property from the market or terminated Pointer's employment.

We have many times held that a judgment will not be reversed for failure of the trial court to instruct upon any particular phase or issue unless request is made at the trial for such instruction. International Printing Ink Corp. v. Leader Press, 177 Okla. 642, 61 P. 2d 664, and cases cited in Okla. Dig., Appeal and Error, Key No. 216, Sec. 1. The trial court in its instructions Nos. 1 and 2 told the jury what issues were raised by the pleadings, and these instructions substantially reflect the allegations in the pleadings of the respective parties. In the absence of any issue raised in the pleadings, or of any request for an instruction on the point involved, no duty rested upon the court to give such instruction on its own motion. Bower v. Selby, 105 Okla. 241, 232 P. 402; Johnson v. Harris, 166 Okla. 23, 25 P. 2d 1072; Maney Bros. & Co. v. Blackburn, 158 Okla. 298, 13 P. 2d 177.

Defendants further contend that the trial court erred in refusing to give its requested instructions Nos. 5 and 6. Requested instruction No. 5, in substance, asked the court to instruct the jury that where property had been listed with a broker under a nonexclusive listing, the one who succeeded in bringing the lessor and lessee together and induced them to enter into a contract was the one who had earned the commission, regardless of who was first to introduce the lessor to lessee, or first showed the property to the purchaser. This instruction was inapplicable, in that only one real estate agent had the property in this case. Hessmer, who finally negotiated the lease with Sears Roebuck & Company, was the husband of the defendant Frances DeBolt Hessmer, and acting for her in the transaction as a principal.

Instruction No. 6, requested by defendants, was that if the jury found from the evidence that at the time plaintiffs introduced Sears Roebuck & Company to the defendant DeBolt, Sears Roebuck & Company was not ready, willing and able to make the lease, it then was the duty of the plaintiffs to continue their efforts and induce the parties to enter into the lease agreement before they would be entitled to their commission, and that unless the jury found that the defendants accepted the service and information furnished by plaintiffs, and that the lease agreement was made solely as a result of that service and information, their verdict should be for the defendants.

If the jury believed the testimony of plaintiffs, that they first brought to the attention of Sears Roebuck & Company the fact that the property was available after the previous lessee had canceled his lease, and continued to endeavor to persuade Sears Roebuck & Company to lease the property, they could properly return a verdict for the plaintiffs, although the deal was consummated by the principal without the knowledge of plaintiffs. Artlin Realty Co. v. Glass, supra, and other cases above cited. The trial court properly instructed the jury that the burden was upon the plaintiffs to establish the material allegations of their petition, and that where a broker did not have exclusive listing or right to sell or lease the particular property, he was not entitled to a commission for the sale or leasing of the property, unless he was the procuring cause of the transaction out of which his right to commission was claimed, and that

in order to be the procuring cause of the transaction the broker must first call the customer's attention to the property, start negotiations and diligently pursue the same, and that such negotiations must culminate in the closing of the deal. The court further instructed the jury that where a broker in such case attempts to sell or lease a building to a prospective customer and fails to complete the transaction and abandons such customer, and thereafter the owner, through his own or his agent's efforts, himself sells or leases the building to the prospective customer, no commission would be due the broker.

Careful consideration of the court's instructions impels the conclusion that they fairly presented to the jury the law governing the questions involved in the instant case.

Affirmed.